Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| MILTON FELIPE RIVERA RODRÍGUEZ<br><br>Apelado<br><br>v.<br><br>YARI RODRÍGUEZ BENÍTEZ<br><br>Apelante | KLAN202300847 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso número: MZ2023CV00253<br><br>Sobre: Desahucio, Cobro de Dinero (Procedimiento Sumario) |
|---|---|---|

Panel integrado por su presidente, el juez Bermúdez Torres, el juez Adames Soto y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 17 de enero de 2024.

Comparece la parte apelante, Yari Rodríguez Benítez, y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez, el 24 de agosto de 2023, notificada el día siguiente. Mediante dicho dictamen, el foro primario ordenó a la parte apelante a satisfacer la cantidad de $1,200.00 por concepto de cánones de arrendamiento adeudados y $1,000.00 en concepto de honorarios de abogado por temeridad a favor de la parte apelada, Milton F. Rivera Rodríguez.

Por los fundamentos que exponemos a continuación, se modifica el dictamen apelado y, así modificado, se confirma.

I

El 15 de febrero de 2023, Milton F. Rivera Rodríguez (Rivera Rodríguez o apelado) incoó una *Demanda* sobre desahucio[1] y cobro de

---

[1] Cabe destacar que, el 21 de abril de 2023, Milton F. Rivera Rodríguez presentó una *Moción Informativa y en Solicitud de Desistimiento*, en la cual indicó que Yari Rodríguez Benítez había desalojado la residencia en cuestión, por lo que desistía de la causa de acción de desahucio. Atendido el asunto, el 24 de abril de 2023, el Tribunal de Primera Instancia emitió y notificó una *Sentencia Parcial*, mediante la cual acogió la mencionada solicitud y decretó el archivo, con perjuicio, de la demanda únicamente en cuanto a la acción de desahucio. Véase, Apéndice del recurso, págs. 29-30.

Número Identificador

SEN2024 _____

dinero, al amparo del procedimiento sumario dispuesto en el Código de Enjuiciamiento Civil de Puerto Rico de 1933, 32 LPRA sec. 2821 *et seq.*, en contra de Yari Rodríguez Benítez (Rodríguez Benítez o apelante).[2] En síntesis, indicó que, durante el mes de abril de 2020, junto a su esposa, llegó a un acuerdo de arrendamiento con Rodríguez Benítez para arrendar una propiedad de este, sita en el municipio de Mayagüez, por un canon de $400.00 mensuales. Alegó que, aunque produjo un contrato escrito, nunca se firmó, por lo que las partes establecieron verbalmente las pautas de arrendamiento donde se acordó lo siguiente: (a) La suma de cuatrocientos dólares como canon mensual de arrendamiento sin el pago de una fianza; (b) Los pagos de utilidades mensuales serían por cuenta de Rodríguez Benítez; (c) El mantenimiento y limpieza del patio sería por cargo de Rodríguez Benítez, ya que iba a utilizar el terreno para un proyecto agrícola que tenía en proceso; (d) La residencia sería utilizada como vivienda principal de Rodríguez Benítez y la finca o terreno para fines agrícolas, según manifestado por esta y aceptado por Rivera Rodríguez.

Rivera Rodríguez arguyó en su *Demanda* que Rodríguez Benítez nunca se hizo cargo del mantenimiento y limpieza del terreno de la referida propiedad, como acordado. Sostuvo que, en el año 2021, Rodríguez Benítez solicitó el reemplazo de varios bienes muebles que se encontraban en la residencia en cuestión, debido a que estos no servían por la presencia de polilla. Asimismo, señaló que Rodríguez Benítez había reclamado que se le estaban dañando sus cosas porque el techo del inmueble filtraba, pero que el hermano de ella podía hacer el trabajo de sellado del techo e indicó lo que necesitaba para dicha labor. Según adujo, accedió a lo anterior y compró el sellador de techo solicitado. Sin embargo, planteó que Rodríguez Benítez le proveyó unos recibos a manuscrito y reclamó el pago de $3,170.00 por concepto de la mano de obra de lo antes acordado y de los materiales de otros asuntos no acordados. Informó que había llegado a un acuerdo con Rodríguez Benítez, el cual consistía en que, comenzando en

---

[2] Apéndice del recurso, págs. 4-6.

octubre de 2021, en vez de pagar $400.00 mensuales por cánones de arrendamiento, pagaría $200.00 mensuales; la diferencia en cantidad sería para cubrir la deuda de este con Rodríguez Benítez.

En la *Demanda*, Rivera Rodríguez alegó que, en el mes de agosto de 2022, Rodríguez Benítez había reclamado la pérdida de sus pertenencias por una filtración en el techo de la propiedad. Sobre ese particular, argumentó que contrató a un ente externo para revisar el techo, quien le indicó que Rodríguez Benítez nunca realizó el sellado acordado. Arguyó que, a raíz del sellado de techo eventualmente realizado por el ente externo, Rodríguez Benítez comenzó a reclamar que se le había violado su privacidad y dejó de pagar los $200.00 mensuales por cánones de arrendamiento acordados. Planteó que, a pesar de que Rodríguez Benítez no estaba residiendo en la propiedad, la cual se encontraba deshabitada, en deterioro y bajo su control, esta tenía mascotas en la residencia. En vista de lo anterior, reclamó las cantidades adeudadas –vencidas, líquidas y exigibles–, desde septiembre de 2022 hasta que se dictara sentencia, por la suma de $400.00 mensuales, más los intereses legales postsentencia, al igual que el pago de las costas y los honorarios de abogado por $1,000.00. Asimismo, solicitó que se declarara con lugar la demanda de epígrafe y se ordenara el lanzamiento de Rodríguez Benítez, así como de cualquier persona que, en nombre de esta, ocupara la propiedad en cuestión.

Por su parte, el 21 de abril de 2023, Rodríguez Benítez presentó su alegación responsiva.[3] En esencia, negó la mayoría de las alegaciones en su contra. Sostuvo que, contrario a lo alegado por Rivera Rodríguez, existía un contrato por escrito, el cual fue suscrito el 20 de abril de 2020, que pagó una fianza de $400.00 adicional al primer mes de renta y que cumplió esencialmente con la responsabilidad del mantenimiento del patio de la propiedad. En cuanto al sellado del techo, arguyó que no se proveyeron la totalidad de los materiales y que, por razones de salud, su hermano no

---

[3] Apéndice del recurso, págs. 7-12.

pudo realizar la labor, lo cual había sido informado a Rivera Rodríguez. Negó haber reclamado los gastos realizados por esta en la propiedad. Sobre ese particular, planteó que Rivera Rodríguez incumplió su promesa verbal de venderle la propiedad en controversia, por lo que habían llegado a un acuerdo de crédito por la suma de $200.00 mensuales, aplicados al canon de arrendamiento por un periodo de dieciocho (18) meses, hasta el saldo de las mejoras, para un total de $3,600.00. Admitió que había dejado de pagar los $200.00 acordados, ello con el propósito de consumir su crédito más rápido. Argumentó, además, que Rivera Rodríguez le adeudaba el pago de $100.00 mensuales por el mantenimiento del patio alrededor de la residencia, $55.76 por los tratamientos mensuales contra polilla y comején, y $161.67 por el tratamiento inicial.

Luego de varias incidencias procesales, el 21 de agosto de 2023, las partes sometieron el *Informe de Conferencia con Antelación a Juicio* (*Informe*),[4] mediante el cual estipularon los siguientes hechos:

1. Don Milton F. Rivera Rodríguez, tiene como [a]poderada a su hija Iris Rivera Colón[,] según es acreditado mediante Escritura N[ú]mero Cuarenta y Seis (46) otorgada el 19 de octubre de 2021 ante la [n]otaria María Herminia Cotto Nieves.
2. Don Milton F. Rivera Rodríguez y su esposa Doña Luz Celenia Colón Cintrón son los dueños de la propiedad dada en arrendamiento a la parte demandada, Yari Rodríguez Benítez[.]
3. Don Milton F. Rivera Rodríguez, su esposa Doña Luz Celenia Colón Cintrón y la joven Yari Rodríguez Benítez otorgaron un contrato de arrendamiento con la joven Yari Rodríguez Benítez[,] dando en arrendamiento la propiedad antes descrita por el término de un año[,] comenzando el 20 de abril de 2020 por la cantidad de $400.00 mensuales. Al término de dicho año, continuó de mes a mes.
4. El 8 de octubre de 2021, Iris Rivera Colón y Don Milton Rivera acordaron en documento a manuscrito recibir el pago de $200.00 mensuales por año y medio y acreditar la diferencia de $200.00 al alegado total pagado por la parte demandada en gastos para la residencia. El mismo comenzaría el 21 de septiembre de 2021 aunque fue suscrito el 8 de octubre de 2021.
5. El 20 de abril de 2023 la parte demandada, Yari Rodríguez Benítez, entregó las llaves de la propiedad arrendada a los demandantes.
6. Se estipula el pago de los gabinetes de cocina que no son parte de lo reclamado por la demandada.[5]

---

[4] Apéndice del recurso, págs. 13-28.
[5] Íd., págs. 18-19.

En lo aquí atinente, en el referido *Informe*, Rodríguez Benítez identificó la siguiente prueba documental que pretendía presentar en el juicio en su fondo:

1. Identificación (a) Contrato
2. Identificación (b) Nota firmada sobre acuerdo de rebaja de canon por gastos
3. Identificación (c) c-1 a c-2 Evidencia de gastos
4. Identificación (d) Evidencia [de] gastos en materiales
5. Identificación (e) Evidencia [de] gastos de materiales y mano de obra
6. Identificación (f) Evidencia de gastos de materiales y mano de obra
7. Identificación (g) Evidencia de pago de limpieza
8. Identificación (h) h-a a h-n Evidencia [de] pago de fumigación
9. Identificación (i) Recibo de compra de gabinete y espejo para baño principal
10. Identificación (j) Gastos de materiales de plomería
11. Identificación (k) Gastos de cablería eléctrica
12. Identificación (l) Gastos de materiales eléctricos
13. Identificación (m) Sellado de techo
14. Identificación (n) Pintura de baños
15. Identificación (o-o-a) *[sic]* Gastos [de] materiales [para] reparaciones [de] baños, electricidad y pintura
16. Identificación (p) Compra de gabinete de baño grande
17. Identificación (q) Materiales para reparaciones
18. Identificación (r) 45 fotos de la r-1 a la r-45
c. *[sic]* Recibos de pagos de fumigación por comején y polilla.[6]

Celebrado el juicio en su fondo y evaluadas las posturas de las partes en cuanto al cobro de dinero, el 24 de agosto de 2023, notificada al día siguiente, el Tribunal de Primera Instancia emitió la *Sentencia* que nos ocupa.[7] Desglosó las siguientes determinaciones de hecho:

1. La parte demandante reconoció que le adeudaba la cantidad de $3,600 a la demandada por concepto de arreglos realizados a la propiedad hasta el 1 de septiembre de 2021.
2. Para pagar esa deuda, el canon de arrendamiento de la demandada[,] que eran $400.00 mensuales[,] sería reducido a $200.00 desde el mes de septiembre de 2021 y por el término de 18 meses.
3. En septiembre de 2022, habiendo transcurrido doce (12) meses desde el acuerdo, la demandada determinó unilateralmente dejar de pagar la renta para acelerar el pago de lo que le debía la parte demandante.
4. Por tanto, la deuda qued[ó] saldada para el mes de noviembre de 2022.
5. La demandada había pagado $400 por concepto de fianza para arrendar la propiedad.

---

[6] Apéndice del recurso, págs. 22-23.
[7] Íd., págs. 32-36.

6. El Tribunal determinó atribuir ese mes de fianza a la renta del mes de diciembre de 2021, que era pagada el 21 de diciembre.

7. La demandada quedó debiendo el pago de los meses de enero 21, febrero 21 y marzo 21. O sea, 3 meses de renta para un total de $1,200.00[.]

Surge del referido dictamen que, al inicio del juicio, el foro primario advirtió que, ante el volumen de la prueba anunciada, quería que las partes explicaran sus teorías. Luego de escuchar la teoría de Rodríguez Benítez, expresó que no atendería reconvención alguna por ser un caso de carácter sumario el cual no lo contemplaba. Sin embargo, aclaró que nada privaba a Rodríguez Benítez de instar un pleito separado para reclamar el cobro de dinero que entendiera que Rivera Rodríguez le debía por alegados arreglos y gastos realizados en la propiedad en cuestión. Además, ordenó que el caso se limitara a establecer la deuda, si alguna, relacionada a los cánones de arrendamiento.

El foro *a quo* señaló que el Artículo 627 del Código de Enjuiciamiento Civil de Puerto Rico de 1933, 32 LPRA sec. 2829, permitía, a modo de excepción y por solicitud de parte interesada, acumular una reclamación en cobro de dinero, fundamentada en la falta de pago del canon o precio en que se basaba la reclamación de desahucio, dentro del mismo procedimiento judicial; es decir, al cobro de lo adeudado por concepto de cánones dejados de pagar. Abundó que, en ese contexto, la reclamación se tenía que limitar o restringir al cobro de lo adeudado, sin que la parte demandada pudiera invocar el incumplimiento del contrato como justificación para no haber pagado los cánones correspondientes u otras reclamaciones accesorias. Por tanto, concluyó que la acumulación permisible de causas de acción accesorias estaba limitada al cobro de dinero de lo estrictamente adeudado por concepto de cánones de arrendamiento. En virtud de ello, ordenó a Rodríguez Benítez a satisfacer la cantidad de $1,200.00 por concepto de cánones de arrendamiento adeudados a Rivera Rodríguez. Además, encontró incursa en temeridad a Rodríguez Benítez y, por tanto, le impuso el pago de $1,000.00 en concepto de honorarios de abogado a favor de Rivera Rodríguez.

Inconforme, el 22 de septiembre de 2023, la parte apelante acudió ante esta Curia mediante el recurso de epígrafe y señaló los siguientes errores:

> Erró el Honorable Tribunal de Primera Instancia al no permitirle a la demandada presentar la prueba anunciada.

> Erró el Honorable Tribunal al determinar que la demandada quedó debiendo tres (3) meses de renta que suman $1,200.00 dólares.

> Erró el Honorable Tribunal de Primera Instancia al determinar que la demandada incurrió en temeridad.

Evaluado lo anterior, ordenamos a la parte apelada presentar su alegato en oposición conforme a la Regla 22 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 22. Asimismo, luego de dar por estipulada la transcripción de la prueba oral, otorgamos al apelado un término adicional para presentar su alegato suplementario. Ha transcurrido mayor término a lo concedido sin que la parte apelada haya acreditado escrito alguno ante esta Curia, por lo que, según advertido, procedemos a resolver sin el beneficio de su comparecencia.

**II**

**A**

El desahucio es un procedimiento especial de naturaleza sumaria cuyo objetivo principal es recuperar la posesión material de una propiedad inmueble mediante el lanzamiento o expulsión del arrendatario o precarista que la detente. 32 LPRA sec. 2822; *Mora Dev. Corp. v. Sandín*, 118 DPR 733 (1987); *C.R.U.V. v. Román*, 100 DPR 318 (1971). El procedimiento sumario de desahucio procura de la manera más rápida posible, la reivindicación de determinados derechos de la persona arrendadora, tales como recuperar la posesión material del bien arrendado, reduciendo al mínimo constitucionalmente permisible las garantías procesales. Tal proceder sumario ha permitido limitar y acortar ciertos términos y prescindir de ciertos trámites comunes al proceso ordinario, sin que ello conlleve suprimir o menoscabar la oportunidad de la persona arrendataria de ejercer con efectividad sus defensas durante el litigio. *Turabo Ltd. Partnership v.*

*Velardo Ortiz*, 130 DPR 226, 241-245 (1992); *Mora Dev. Corp. v. Sandín*, supra, págs. 749-750. El desahucio no es una de las formas de terminar el arrendamiento, sino un medio de recobrar judicialmente la cosa inmueble arrendada, cuando aquél se acaba por la concurrencia de ciertas causas extintivas. Esta acción tiene un carácter resolutorio del contrato. *Mora Dev. Corp. v. Sandín*, supra.

El Código de Enjuiciamiento Civil de Puerto Rico de 1933 establece las normas vigentes sobre la acción de desahucio y establece el procedimiento a cumplir en su trámite ante los tribunales. 32 LPRA sec. 2821 *et seq.* En su Artículo 620, el citado estatuto dispone que toda persona dueña de finca, sus apoderados, los usufructuarios y cualquier otra persona que tenga derecho a disfrutar la propiedad y sus causahabientes tendrán a su haber el procedimiento de desahucio. 32 LPRA sec. 2821. Asimismo, el Artículo 627 del Código de Enjuiciamiento Civil de Puerto Rico de 1933, 32 LPRA sec. 2829, permite, a modo de excepción y únicamente a solicitud de parte interesada, acumular una reclamación en cobro de dinero, fundamentada en la falta de pago del canon o precio en que se basa la reclamación de desahucio, dentro del procedimiento judicial sobre desahucio. La acción acumulable no se refiere a aquellas en las que se invoque como defensa un conflicto de título, la defensa de vicios ocultos en la propiedad como justificación para no proceder al pago pactado, o una reconvención por daños. En estas últimas circunstancias se requerirá un juicio plenario o, dicho de otra manera, el juicio declarativo correspondiente en el curso ordinario de los procedimientos judiciales. Cabe destacar que la acción acumulable tiene que estar íntimamente atada o relacionada a la acción de desahucio. Es decir, al cobro de lo adeudado por concepto de cánones dejados de pagar.

Cónsono con lo anterior, la reclamación se tiene que limitar o restringir al cobro de lo adeudado, sin que la parte demandada pueda invocar el incumplimiento del contrato como justificación para no haber pagado los cánones correspondientes u otras reclamaciones accesorias.

Dada la naturaleza sumaria del procedimiento de desahucio, una vez de trabada una controversia sobre otras consideraciones relativas al cobro de dinero, el tribunal viene obligado a reivindicar la posesión del inmueble mediante el lanzamiento o expulsión de la persona arrendataria o precarista que detenta la posesión del bien sin pagar merced alguna, y ordenar el cobro de dinero de los cánones adeudados y otros reclamos accesorios mediante el cauce ordinario. En otras palabras, la acumulación permisible de causas de acción accesorias está limitada al cobro de dinero de lo estrictamente adeudado por concepto de cánones de arrendamiento. Véase, *Fernández & Hno. v. Pérez*, 79 DPR 244 (1956).

**B**

En una acción de cobro de dinero, la parte demandante únicamente puede reclamar, por vía judicial, aquellas deudas que sean vencidas, líquidas y exigibles. *RMCA v. Mayol Bianchi*, 208 DPR 100, 108 (2021). Respecto a ello, el Tribunal Supremo de Puerto Rico expresó que:

> El vocablo "líquida" en relación con una cuenta, en lenguaje corriente significa el saldo "o residuo de cuantía cierta que resulta de la comparación del cargo con la data". Y la voz "exigible" refiriéndose a una obligación, significa que puede demandarse su cumplimiento. *Guadalupe v. Rodríguez*, 70 DPR 958, 966 (1950).

En ese sentido, la deuda es "líquida" cuando la cuantía de dinero debida es "cierta" y "determinada". *Ramos y otros v. Colón y otros*, 153 DPR 534, 546 (2001), citando a M.A. Del Arco Torres y M. Pons González, *Diccionario de Derecho Civil*, Navarra, Ed. Aranzadi, 1984, T. II, pág. 168 y a *Freeman v. Tribunal Superior*, 92 DPR 1, 25 (1965). Por otro lado, la deuda es "exigible" cuando la obligación no está sujeta a una causa de nulidad y puede demandarse su cumplimiento. *Guadalupe v. Rodríguez*, supra. Sobre ese particular, nuestro Tribunal Supremo determinó en *RMCA v. Mayol Bianchi*, supra, págs. 108-109, lo siguiente:

> La deuda es líquida por ser cierta y determinada, y es exigible porque puede demandarse su cumplimiento. Así que, "al alegarse que la cuenta es 'líquida y exigible' se están exponiendo hechos, a saber: que el residuo de la cuantía ha *sido aceptado como correcto por el deudor y que está vencido*". (Citas omitidas).

Por otro lado, la parte que exige el cumplimiento de una obligación es a quien le corresponde probar su existencia. *Admor. F.S.E. v. Almacén Ramón Rosa*, 151 DPR 711, 719 (2000); *H.R. Stationery, Inc. v. E.L.A.*, 119 DPR 129, 134 (1987). Lo anterior es cónsono con la Regla 110 de Evidencia de Puerto Rico de 2009, 32 LPRA Ap. VI, R. 110, pues el peso de la prueba recae sobre la parte que resultaría vencida en caso de no presentarse prueba alguna.

**C**

Las Reglas de Evidencia de Puerto Rico de 2009, según enmendadas, 32 LPRA Ap. VI (Reglas de Evidencia), rigen la forma y el proceso mediante el cual se admite la prueba ante los tribunales. Previo a la admisión de evidencia, se requiere que la misma sea autenticada o identificada. En cuanto a ello, la Regla 901 de Evidencia establece que este requisito "se satisface con la presentación de evidencia suficiente para sostener una determinación de que la materia en cuestión es lo que la persona proponente sostiene". 32 LPRA Ap. VI, R. 901.

En nuestro ordenamiento jurídico, las Reglas 104, 105 y 106 de Evidencia, 32 LPRA Ap. VI, R. 104-106, regulan el procedimiento a seguir ante la admisión o exclusión errónea de evidencia y el efecto que tiene la comisión de tales errores sobre un dictamen. En particular, la Regla 104(a) de Evidencia, 32 LPRA Ap. VI, R. 104(a), establece que "[l]a parte perjudicada por la admisión errónea de evidencia debe presentar una objeción oportuna, específica y correcta o una moción para que se elimine del récord evidencia erróneamente admitida cuando el fundamento para objetar surge con posterioridad".

Cónsono con lo anterior, la Regla 105(a) de Evidencia, 32 LPRA Ap. VI, R. 105(a), indica que, como norma general, no se dejará sin efecto una determinación de admisión o exclusión errónea de evidencia ni se revocará por ello sentencia o decisión alguna, a menos que: (1) La parte perjudicada con la admisión o exclusión de evidencia hubiere satisfecho los requisitos de objeción, fundamento u oferta de prueba establecidos en la

Regla; y (2) El tribunal que considera el señalamiento estime que la evidencia admitida o excluida fue un factor decisivo o sustancial en la sentencia emitida o decisión cuya revocación se solicita.

Así pues, para determinar si procede revocar un dictamen por la admisión o exclusión errónea de evidencia, debe precisarse si dicha prueba pudo haber tenido un efecto determinante en la mente del juzgador de los hechos o si, independientemente del resto de la prueba presentada en juicio, de no haberse admitido o excluido esa evidencia, el resultado del caso probablemente hubiera sido distinto. *Pueblo v. Rosaly Soto*, 128 DPR 729, 745-746 (1991). Es decir, es preciso llevar a cabo un "un cálculo algo especulativo, en términos de cuál es la *probabilidad* de que, *de no haberse cometido el error*, el resultado hubiera sido distinto". *Izagas Santos v. Family Drug Center*, 182 DPR 463, 483-484 (2011), citando a E.L. Chiesa Aponte, *Reglas de Evidencia de Puerto Rico de 2009*, San Juan, Pubs. J.T.S., 2009, pág. 88. Lo contrario se consideraría un error benigno que no conllevaría revocar la determinación. *Íd.*

No obstante, la Regla 106 de Evidencia, 32 LPRA Ap. VI, R. 106, establece que un tribunal apelativo podrá considerar un señalamiento de error sobre admisión o exclusión errónea de evidencia, aun cuando no se haya cumplido con la Regla 104 de Evidencia, *supra*. A esos efectos, la precitada Regla 106 del referido cuerpo reglamentario establece que esto se permitirá, a modo de excepción, cuando:

(A) El error fue craso ya que no cabe duda de que fue cometido;

(B) [E]l error fue perjudicial porque tuvo un efecto decisivo o sustancial en la sentencia o decisión cuya revocación se solicita, y

(C) [E]l no corregirlo resulte en un fracaso de la justicia.

**D**

Sabido es que este Tribunal Apelativo actúa, esencialmente, como foro revisor. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Es por ello que, nuestra encomienda principal es examinar cómo los tribunales inferiores aplican el Derecho a los hechos particulares de cada

caso. *Íd.* Cónsono con lo anterior, el desempeño de nuestra función revisora se fundamenta en que el Tribunal de Primera Instancia desarrolle un expediente completo que incluya los hechos que haya determinado ciertos a partir de la prueba que se le presentó. *Íd.* Es decir, nuestra función de aplicar y pautar el Derecho requiere saber cuáles son los hechos, tarea que corresponde, primeramente, al foro de instancia. *Íd.* Como foro apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. *Íd.* Esa es la función de los tribunales de primera instancia. *Íd.*

Por el contrario, al momento de analizar prueba documental, prueba pericial o testimonios de testigos ofrecidos mediante declaraciones escritas, estamos en la misma posición que el Tribunal de Primera Instancia. *Ortiz et al. v. S.L.G. Meaux*, 156 DPR 488, 495 (2002). Así, "el Tribunal Apelativo tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021), citando a *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011). Asimismo, es norma básica que las conclusiones de derecho son revisables en su totalidad por el foro apelativo. *Dávila Nieves v. Meléndez Marín*, supra, pág. 770. Ahora bien, como norma general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los tribunales inferiores, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. *Íd.*, pág. 771.

En nuestro ordenamiento jurídico no se favorece la intervención de los foros apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Sucesión José Emanuel Mena Pamias y otros v. Jiménez Meléndez y otros*, 2023 TSPR 108, resuelto el 5 de septiembre de 2023;

*Pueblo v. Hernández Doble*, 210 DPR 850 (2022); *Santiago Ortiz v. Real Legacy et al.*, supra. Ello, debido a que el foro de instancia está en mejor posición que un tribunal apelativo para llevar a cabo esta importante tarea judicial. *Dávila Nieves v. Meléndez Marín*, supra, pág. 771.

En consideración a la norma de corrección que cobija a las determinaciones realizadas por el Tribunal de Primera Instancia, cuando una parte peticionaria señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que esta ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario. Ello se logra utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa. *Pueblo v. Pérez Delgado*, 2023 TSPR 35, 211 DPR __ (2023). Los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de estos mecanismos, la prueba que tuvo ante sí el foro primario. *Íd.*

**E**

La concesión de honorarios de abogado o abogada está regulada por la Regla 44.1(d) de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 44.1(d). La misma autoriza al tribunal a imponer honorarios de abogado o abogada cuando una parte o su representación legal procede con temeridad o frivolidad. *Pérez Rodríguez v. López Rodríguez et al.*, 210 DPR 163, 192 (2022); *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 145 (2022). En específico, el referido inciso de la citada regla reza como sigue:

> En caso [de] que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al [o a la] responsable el pago de una suma por concepto de honorarios de abogado [o abogada] que el tribunal entienda correspondan a tal conducta. En caso [de] que el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o instrumentalidades haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado [o abogada], excepto en los casos en que esté expresamente exento por ley del pago de honorarios de abogado [o abogada].

La *temeridad* se define como aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables. *Pérez Rodríguez v. López Rodríguez et al.*, supra, pág. 193; *SLG González-Figueroa v. SLG et al.*, supra, pág. 148; *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 504 (2010). Sobre este particular, el Tribunal Supremo de Puerto Rico ha expresado que "[l]a temeridad es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia". *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 779 (2001), citando a *Elba A.B.M. v. U.P.R.*, 125 DPR 294, 329 (1990). Asimismo, dicho Foro ha definido el concepto temeridad como la actuación terca, obstinada, contumaz y sin fundamentos, de un litigante que obliga a la otra parte innecesariamente a asumir las molestias, gastos, trabajo e inconvenientes de un pleito. *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 240 (2013). Por otro lado, la *frivolidad* se define como "[a]quello que no tiene razón de ser, sin méritos, sin peso ni lógica alguna". *Depto. Rec. v. Asoc. Rec. Round Hill*, 149 DPR 91, 100 (1999), citando a I. Rivera García, *Diccionario de Términos Jurídicos*, 2da ed., New Hampshire, Equity Publishing Corp., 1985, pág. 108. Solo lo claramente irrazonable o inmeritorio debe dar paso a una determinación de frivolidad por un tribunal apelativo. *Íd*.

El propósito de la imposición de honorarios de abogado o abogada en casos de temeridad es "establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito". *Andamios de P.R. v. Newport Bonding*, 179 DPR 503, 520 (2010), citando a *Fernández v. San Juan Cement Co., Inc.,* 118 DPR 713, 718 (1987); *Pérez Rodríguez v. López Rodríguez et al.*, supra, pág. 193; *SLG González-Figueroa v. SLG et al.*, supra, págs. 148-149.

Además, la imposición de honorarios de abogado o abogada, tiene como objetivo disuadir la litigación innecesaria y alentar las transacciones mediante la imposición de sanciones a la parte temeraria para compensar los perjuicios económicos y las molestias sufridas por la otra parte. *Fernández v. San Juan Cement Co., Inc.*, supra, págs. 718-719. Nuestro Foro de última instancia ha dispuesto que, la facultad de imponer honorarios de abogado o abogada, es la mejor arma que ostentan los tribunales para gestionar de forma eficaz los procedimientos judiciales y el tiempo de la administración de la justicia, así como para proteger a las personas litigantes de la dilación y los gastos innecesarios. *SLG González-Figueroa v. SLG et al.*, supra, pág. 149.

La determinación sobre si una parte ha procedido con temeridad descansa en la sana discreción del tribunal sentenciador y no será variada en apelación a menos que se demuestre que este ha abusado de su discreción. *Pérez Rodríguez v. López Rodríguez et al.*, supra, pág. 193; *SLG González-Figueroa v. SLG et al.*, supra, pág. 150. Tampoco será variada la partida concedida, a menos que resulte ser excesiva, exigua o constituya un abuso de discreción. *Íd.*

A la luz de la normativa antes expuesta, procedemos a disponer de la controversia ante nuestra consideración.

**III**

Como primer señalamiento de error, la parte apelante sostiene que el Tribunal de Primera Instancia erró al no permitirle presentar la prueba anunciada. Específicamente, arguye que, al archivarse la acción de desahucio, la acción restante sobre cobro de dinero convirtió el caso en uno ordinario, por lo que tenía derecho de presentar la prueba anunciada en la vista. En su segundo señalamiento de error, plantea que el foro primario incidió al determinar que esta adeuda $1,200.00 por tres (3) meses de arrendamiento. En esencia, alega que había anunciado prueba conducente a establecer que tenía a su favor un crédito por haber mantenido la propiedad en cuestión en condiciones salubres. Sobre ese

particular, aduce que incurrió en una inversión de $1,355.43 por el tratamiento contra comején, reparaciones a la cisterna de agua potable y plomería del inmueble objeto de la acción de epígrafe. Por estar los errores relacionados entre sí, los discutiremos conjuntamente.

Conforme esbozáramos previamente, como norma general, los tribunales apelativos aceptamos como correctas las determinaciones de hechos de los tribunales inferiores, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. Los foros apelativos no debemos intervenir con la apreciación de la prueba de los foros primarios, salvo que exista pasión, prejuicio, parcialidad o error manifiesto. Es decir, el foro primario merece deferencia ante planteamientos de error sobre admisibilidad de la prueba presentada y la apreciación que le confirió. En el caso de autos, evaluamos tanto la prueba documental ante nos, como la transcripción de la prueba oral y entendemos correctas las determinaciones de hechos desglosadas por el foro *a quo*. En ese sentido, nuestra intervención se ciñe a atender cuestiones puramente normativas a la luz de la prueba contenida en el expediente apelativo y la referida transcripción que atendemos.

De una revisión de la prueba documental, así como de la transcripción de la prueba oral desfilada en el juicio en su fondo, colegimos que el Tribunal de Primera Instancia no incurrió en pasión, prejuicio, parcialidad o error manifiesto. Surge expresamente de la transcripción de la prueba oral que, desde el inicio de la vista, la Juzgadora de los hechos pautó los parámetros del desfile de prueba y las partes no tuvieron objeción al respecto.[8] Específicamente, el foro de origen dejó claro que la prueba a dirimirse estaría limitada a lo pertinente al cobro de los cánones de arrendamiento, objeto de la acción de epígrafe. La Juzgadora explicó que ello no impediría que la parte apelante, de entenderlo necesario, incoara una acción independiente sobre cobro de dinero de las cantidades que, según alegó, el apelado le debía por unas presuntas mejoras realizadas

---

[8] Véase, Transcripción de la Prueba Oral (TPO), págs. 44-45.

por esta a la propiedad en cuestión. De hecho, surge de la referida transcripción, que la apelante entendió lo anterior y estuvo de acuerdo.[9] Asimismo, se desprende de la transcripción de la prueba oral que la Juzgadora, en conjunto con las partes –quienes en sala estipularon las cantidades adeudadas por la apelante por concepto de cánones de arrendamiento y una cantidad adeudada por el apelado por unos arreglos que esta había realizado a la propiedad–, realizó el cómputo de la cifra final adeudada por la parte apelante. Al establecer la suma final adeudada por la apelante, esta, nuevamente, estuvo conforme con la determinación y así se expresó en el juicio.[10] De la mencionada transcripción no surge objeción por parte de la apelante o su representación legal, ni oferta de prueba alguna, que nos mueva a resolver que los primeros dos errores señalados en el presente recurso se cometieron. Por consiguiente, el proceder del foro primario merece deferencia pues, según antes detallado, salvo que exista pasión, prejuicio, parcialidad o error manifiesto, los foros revisores no debemos intervenir con la apreciación de la prueba del foro de origen. En conclusión, los primeros dos errores no se cometieron.

Ahora bien, como tercer señalamiento de error, la parte apelante alega que el foro *a quo* erró al determinar que esta incurrió en temeridad. Plantea que no hay prueba alguna en el expediente que sostenga dicha determinación. Además, sostiene que tal determinación constituye un abuso de discreción, toda vez que siempre actuó con responsabilidad, de forma prudente, con apego a la verdad y fue facilitadora de los procedimientos judiciales.

Examinado con detenimiento el recurso ante nos, así como la totalidad del expediente y la transcripción de la prueba oral, a nuestro juicio, el foro primario incidió en resolver que la parte apelante incurrió en temeridad. Nos explicamos.

---

[9] Véase, TPO, págs. 91-92.
[10] Íd., págs. 108-109.

Tal como reseñáramos, la imposición de honorarios de abogados y abogadas recae en la sana discreción del tribunal sentenciador. No obstante, los tribunales apelativos solo pueden intervenir cuando se demuestre que el foro de origen abusó de su discreción. En el caso de autos, no surge actuación alguna de parte de la apelante que ameritara la imposición de temeridad, pues el expediente no refleja actuación terca, obstinada, contumaz y sin fundamentos por la mencionada parte durante todo el procedimiento judicial. Luego de un análisis sosegado de la totalidad del expediente y a la luz del derecho antes expuesto, resolvemos que no procedía la imposición de temeridad a la parte apelante. Por consiguiente, el tercer error se cometió. En consecuencia, modificamos el dictamen apelado a los únicos efectos de eliminar la referida imposición de temeridad. Así modificada, al evaluar concienzuda y ponderadamente los eventos procesales al palio de la normativa jurídica antes esbozada, confirmamos la determinación emitida por el Tribunal de Primera Instancia.

**IV**

Por los fundamentos que anteceden, modificamos el dictamen apelado a los únicos efectos de eliminar la imposición de temeridad a Yari Rodríguez Benítez. Así modificada, confirmamos la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Bermúdez Torres confirmaría en su totalidad el dictamen recurrido, por entender que no se ha superado el estándar de abuso de discreción al revisar determinaciones discrecionales para revocar la determinación de temeridad. En tal sentido, disiente de esa parte de la Sentencia.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones